# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CREATE-A-PACK FOODS,

                Plaintiff,

        v.                               **Case No. 20-CV-499**

BATTERLICIOUS COOKIE
DOUGH COMPANY, et al.,

                Defendants.

# ORDER

## 1. Background

Defendant Batterlicious Cookie Dough Company is a Florida corporation that makes and distributes "edible cookie dough"—cookie dough designed for consumption without baking. (ECF No. 49, ¶¶ 2, 8.) Defendants Claudia and Stephen Levy, both Florida citizens, founded Batterlicious in 2014. (*Id.*, ¶¶ 3, 4, 7.) They operated the company out of their Florida home until 2016, when they entered into a co-packing agreement with a third-party manufacturer. (*Id.*, ¶¶ 10-13.) That manufacturer eventually "refused to extend its contract with Batterlicious," leading Batterlicious to search for new co-packers. (*Id.*, ¶¶ 14-16.) One of the co-packers it contacted was

plaintiff Create-A-Pack Foods, Inc., a Wisconsin corporation that manufactures and packages food products. (*Id.*, ¶¶ 1, 17.)

On March 13, 2018, Create-A-Pack emailed Batterlicious its Credit Application packet, which included Create-A-Pack's Credit Application, its Terms and Conditions of Sale, and its Warehousing Policy. (ECF No. 49, ¶¶ 18-20.) Batterlicious returned the packet fully executed—signed by Claudia Levy on behalf of Batterlicious—on March 19, 2018. (*Id.*, ¶¶ 26, 27.) In addition to the packet, the Levys also signed an Individual Personal Guaranty, guaranteeing payment of all services and merchandise that Batterlicious purchased from Create-A-Pack. (*Id.*, ¶¶ 29-30.)

Create-A-Pack then began manufacturing and packaging Batterlicious's edible cookie dough products. (ECF No. 49, ¶ 32.) It delivered those products to Batterlicious in the summer and fall of 2018. (*Id.*, ¶ 39.) Batterlicious accepted those deliveries and Create-A-Pack billed Batterlicious by invoice for the products delivered. (*Id.*, ¶¶ 41-42.) When the invoices came due, Batterlicious failed to pay. (*Id.*, ¶¶ 43-44.) By March 22, 2019, the unpaid balance on Batterlicious's account with Create-A-Pack was $306,580.75. (*Id.*, ¶ 44.)

That day, Batterlicious executed and delivered to Create-A-Pack a General Business Security Agreement. (ECF No. 49, ¶ 49.) Batterlicious and Create-A-Pack also executed a Purchase Order Fulfillment Agreement. (*Id.*, ¶ 51.) That Agreement states that "to evidence certain amounts owed by Batterlicious to [Create-A-Pack], it is

contemplated by (sic) that Batterlicious will execute and deliver to [Create-A-Pack] a note and related documents (the 'Note') [.]" (ECF No. 36-3 at 1.) That Agreement further states that, "in partial consideration of the execution and delivery to [Create-A-Pack] by Batterlicious of the Note, the parties hereto desire to document the delivery schedule for certain purchase orders, as set forth herein." (*Id.*)

In relevant part, the Agreement provided:

1.  <u>Delivery Schedule</u>: CAP Agrees to produce and make available for delivery the items ordered by Batterlicious pursuant to the delivery schedule set forth on Schedule 1 hereto. Notwithstanding the delivery schedule, CAP will use best efforts to make earlier delivery.

2.  <u>Failure to Meet Schedule</u>: In the event CAP fails to produce and make available for delivery the items ordered by Batterlicious pursuant to the delivery schedule set forth on Schedule 1 hereto, the Note, together with all related documents, shall automatically terminate and be of no force and effect without further action by the parties hereto or thereto. A failure to deliver based on a mechanical failure or failure of one of CAP's suppliers to make proper delivery shall extend the delivery date in proportion to such delay, but in no event for more than five (5) days.

(*Id.*) Schedule 1 listed four purchase orders for which deliveries were to be made, the first on March 25, 2019, and the last three on March 27, 2019. (*Id.* at 3.)

As set forth in the Purchase Order Fulfillment Agreement, Batterlicious executed and delivered to Create-A-Pack a Promissory Note promising to pay Create-A-Pack the $306,580.75 plus interest. (ECF No. 49, ¶ 46.)

Between March and May 2019, Create-A-Pack delivered additional cookie dough products to Batterlicious. (ECF No. 49, ¶ 62.) It appears that these shipments were in

3

addition to any of the deliveries listed on Schedule 1 to the Purchase Order Fulfillment Agreement. Batterlicious accepted each delivery. (*Id.*, ¶ 63.)

On December 12, 2019, Create-A-Pack demanded payment of the outstanding principal owed on the Promissory Note. (ECF No. 49, ¶ 55.) Create-A-Pack contends that Batterlicious failed to make the payment. (*Id.*, ¶ 56.) In response, Batterlicious implicitly concedes that it did not make the payment (*Id.*, ¶ 57), but contends that "the Note was void pursuant to the Purchase Order Fulfillment Agreement." (*Id.*) Batterlicious concedes "for purposes of this motion" that, as of the date payment was demanded, the total owed on the Note was $318,482.97. (*Id.*)

Create-A-Pack also billed Batterlicious for the products it had delivered between March and May 2019. (ECF No. 49, ¶ 64.) Batterlicious failed to pay Create-A-Pack for those products as the invoices became due. (*Id.*, ¶ 65.) As of December 31, 2019, the unpaid balance on Batterlicious's account with Create-A-Pack for goods delivered between March and May 2019 totaled $132,200.36. (*Id.*, ¶ 66.)

On March 3, 2020, Create-A-Pack filed this lawsuit, alleging two claims for breach of contract against Batterlicious and a claim for breach of guaranty against the Levys. (*See* ECF No. 1.) Batterlicious and the Levys responded by filing several counterclaims, alleging a claim for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, strict responsibility misrepresentation and statutory misrepresentation under Wis. Stat. § 100.18. (*See* ECF No. 16.) Create-A-

Pack has moved for summary judgment on each of its claims and on the defendants' counterclaims. (*See* ECF No. 33.) The defendants responded with a cross-motion for summary judgment. (*See* ECF No. 47.) Those motions have been fully briefed and are ready for resolution.

All parties have consented to the full jurisdiction of this court. (ECF Nos. 9, 10.)

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving cross-motions for summary judgment, the court views each motion "separately in the sense that for each motion, factual inferences are viewed in the nonmovant's favor." *Wilson v. Baptiste*, No. 13 CV 07845, 2016 WL 3878125, at *2 (N.D. Ill. July 18, 2016) (citing *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015)). The controlling question is whether the evidence as a whole—taken from both motions— "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011) (reviewing cross-motions for summary

judgment); *see also Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012*)*; *Smart v. Int'l Bhd. of Elec. Workers, Loc. 702*, 453 F. App'x 650, 653-54 (7th Cir. 2011).

### 3. Analysis

#### 3.1. Batterlicious's Alleged Breach of the Promissory Note

Create-A-Pack alleges that Batterlicious breached the Promissory Note by failing to pay "the amounts owed under the Note" despite Create-A-Pack demanding "payment of the outstanding principal." (ECF No. 1, ¶¶ 21, 22.) It moves for summary judgment, arguing that "Batterlicious is liable to [Create-A-Pack] for all sums due and owing under the Note." (ECF No. 34 at 7.)

Batterlicious responds with a cross motion for summary judgment, arguing that Create-A-Pack breached the Purchase Order Fulfillment Agreement and that the Promissory Note was "automatically terminated" as a result, destroying Create-A-Pack's breach of contract claim. (ECF No. 50 at 2.) Specifically, Batterlicious argues that Create-A-Pack breached the Purchase Order Fulfillment Agreement when it "failed to produce any of the 108 cases of Birthday Yum product as required for Meijer Order 209979537," and when "it produced only 163 cases of the 430 cases of Peanut Butter Cup product as required for UNFI PO 487337." (*Id.*)

Create-A-Pack maintains that it "met its obligations" under the Purchase Order Fulfillment Agreement "by delivering the items it produced to Lindner Logistics LLC, which served as Batterlicious' warehouse." (ECF No. 53 at 2.) It points out that Lindner

6

confirmed that it had inventory "on hand" to fill the Meijer Order and to partially fill the UNFI order. (*Id.* (citing ECF No. 49, ¶ 83).) It also claims that it delivered enough Peanut Butter Cup product to Lindner and to UNFI's warehouse to finish filling the UNFI order. (*Id.* at 2-3.)

Batterlicious responds by arguing that the Purchase Order Fulfilment Agreement required Create-A-Pack to "produce" new Birthday Yum product, not use the product "on hand" at Lindner to fulfill its obligations. (ECF No. 58 at 1-4.) It contends that it already owned the dough sitting in Lindner's warehouse, although it is not clear it had paid for it. It further suggests that any Birthday Yum product that Lindner had "on hand" was expired and therefore not available to fill the Meijer order. (*See id.* at 2-3; ECF No. 59, ¶ 11.) As for the Peanut Butter Cup product, Batterlicious concedes that there is "some evidence" that Create-A-Pack produced sufficient cases of Peanut Butter Cup to fill the UNFI order. (*See* ECF No. 58 at 3.) Therefore, the only issue is whether Create-A-Pack breached the Purchase Order Fulfilment Agreement when it allegedly failed to "produce" new Birthday Yum product for the Meijer order.

It is undisputed that, in fulfilling its obligations, Create-A-Pack relied in part upon inventory previously delivered to Lindner, which served as Batterlicious's warehouse. The parties are in disagreement as to whether the Purchase Order Fulfilment Agreement allowed it to do so or whether Create-A-Pack was required to

produce new cookie dough notwithstanding the volumes of dough sitting in Lindner's warehouse.

Even if Create-A-Pack was permitted under the Purchase Order Fulfillment Agreement to fulfill its delivery obligations by using product stored at Lindner, there remains a dispute of material fact as to whether the product that was in Lindner's warehouse was still any good as of the delivery dates set forth in Exhibit 1. Batterlicious contends it had expired, a point it raised for the first time in its reply brief, depriving Create-A-Pack of the opportunity to respond.

Neither party explains the purpose of either the Promissory Note or the Purchase Order Fulfillment Agreement. Both documents were executed after Batterlicious had failed to pay Create-A-Pack "for the purchase price of the edible cookie dough products as the invoices became due." (ECF No. 49, ¶¶ 43-46.) According to the Purchase Order Fulfillment Agreement, the Promissory Note was executed "to ensure Batterlicious' payment of the account." (*Id.*, ¶ 46.) However, it is unclear why the Note was necessary to ensure Batterlicious' payment. It would seem that the parties' earlier agreements— that is, the Credit Application and the Individual Personal Guaranties--obligated Batterlicious and the Levys to pay Create-A-Pack for the cookie dough products that it already delivered. (*See Id.*, ¶¶ 28-29.)

In any event, due to the existence of genuine issues of material fact, this court cannot conclude as a matter of law that Create-A-Pack breached the Purchase Order

Fulfillment Agreement. Therefore, both Create-A-Pack's motion for summary judgment for breach of the Promissory Note and Batterlicious's cross-motion for summary judgment for breach of the Purchase Order Fulfillment Agreement are denied.

### 3.2. Claudia and Stephen Levys' Alleged Breach of Guaranty

The defendants argue that the Levys' individual personal guaranties are among the "related documents" that were "terminated" by Create-A-Pack's alleged breach of the Purchase Order Fulfillment Agreement. (*See* ECF No. 58 at 6.) But whether the personal guaranties are "related documents" within the meaning of Section 2 of the Purchase Order Fulfillment Agreement is unclear. Neither party submits evidence on the issue. Without evidence of the parties' intent in entering into the Purchase Order Fulfilment Agreement, the court cannot determine whether Create-A-Pack's claim against the Levys for breach of the personal guaranty fails as a "consequence" of its alleged breach of the Purchase Order Fulfilment Agreement. Therefore, Create-A-Pack's motion for summary judgment on its claim against the Levys for breach of the personal guaranties is denied.

### 3.3. Batterlicious's Alleged Breach of the Credit Application under the UCC

Create-A-Pack moves for summary judgment on its claim that Batterlicious breached the Credit Application when it failed to pay for the cookie dough products it "received and accepted" from Create-A-Pack between March and May 2019. (ECF No. 53 at 5; *see also* ECF No. 34 at 7-8.) Batterlicious responds that Create-A-Pack's breach of

the Purchase Order Fulfillment Agreement "released Batterlicious from performance." (ECF No. 50 at 4.) In other words, Batterlicious "is not obligated to pay [Create-A-Pack] when [Create-A-Pack] was destroying the Batterlicious business." (*Id.* at 4-5.)

As Batterlicious points out, a material breach of contract "by one party may excuse subsequent performance by the other." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67, 77 (1996). If Create-A-Pack breached the Purchase Order Fulfillment Agreement, then Batterlicious may be excused from performing under that agreement. However, the Purchase Order Fulfillment Agreement is a separate contract from the Credit Application. The Purchase Order Fulfillment Agreement obligated Create-A-Pack to "produce and make available for delivery the items ordered by Batterlicious pursuant to the delivery schedule set forth on Schedule 1." (ECF No. 36-3 at 1.) Schedule 1 lists four purchase orders, one due on March 27, 2019, and three due March 29, 2019. (*Id.* at 3.) But Create-A-Pack is claiming that Batterlicious breached the Credit Application by failing to pay for products it received beyond those listed in Schedule 1. (ECF No. 34 at 7.)

Even assuming Create-A-Pack breached the Purchase Order Fulfillment Agreement, it is unclear why that breach would result in Batterlicious being excused from its obligations imposed by a separate contract. Batterlicious, for example, is not claiming that the Credit Application is one of the "related documents" that a breach of the Purchase Order Fulfilment Agreement would allegedly terminate. Indeed, as

Create-A-Pack argues, "it is a complete mystery exactly how defendants arrived at the conclusion that [Create-A-Pack's] alleged breach of the [Purchase Order Fulfillment Agreement] discharged them from having to pay for goods purchased completely independent of the debt set forth in the Note." (ECF No. 53 at 5.)

The parties agree that, between March 2019 and May 2019, Create-A-Pack delivered "additional cookie dough products to Batterlicious." (ECF No. 49, ¶ 62.) The parties also agree that Batterlicious accepted these products. (*Id.*, ¶ 63.) And the parties also agree that, although Create-A-Pack billed Batterlicious for these products, Batterlicious failed to pay for them. (*Id.*, ¶¶ 64-65.) "The buyer must pay at the contract rate for any goods accepted." Wis. Stat. § 402.607(1). "When the buyer fails to pay the price as it becomes due, the seller … may recover the price of goods accepted." Wis. Stat. § 402.709(1)(a). Because the parties agree that Batterlicious accepted additional cookie dough products and then failed to pay Create-A-Pack for them, Create-A-Pack as a matter of law may recover the price of those products—which the parties agree is $132,200.36. (*See* ECF No. 49, ¶ 66.) Consequently, Create-A-Pack's motion for summary judgment regarding Batterlicious's breach of the Credit Application for products shipped and received after March 2019 is granted.

The parties also agree that the Credit Application obligated Batterlicious "to pay service charges of 2% per month from the due date of each invoice to the date of payment." (ECF No. 49, ¶ 73.) Those charges "have accrued at a rate of $2,644.01 per

month on the unpaid invoices for goods accepted by Batterlicious." (*Id.*, ¶ 74.) Because Create-A-Pack can recover the price of those goods that Batterlicious accepted, it can also recover the service charges that have accrued on those unpaid invoices. *See* Wis. Stat. §§ 402.709-.710.

### 3.3.1. Batterlicious's Alleged Failure to Pay for "Obsolete Inventory"

Create-A-Pack also argues that Batterlicious breached the Credit Application—specifically, the "Terms & Conditions of Sale"—by failing to pay it for "the materials [Create-A-Pack] acquired and produced specifically for Batterlicious' product line that have since become obsolete inventory." (ECF No. 34 at 8.) Batterlicious responds that it is not obligated to pay Create-A-Pack for any "obsolete inventory" because the "Terms & Conditions of Sale" are unenforceable and "void and of 'no force and effect' under the [Purchase Order Fulfillment Agreement] as it is 'related' to the Note." (ECF No. 58 at 10.)

Even assuming that the Terms and Conditions obligate Batterlicious to pay Create-A-Pack for "obsolete inventory," a dispute of material fact exists as to how much "obsolete inventory" Create-A-Pack has at its facilities. For example, Batterlicious argues that the "cartons, caps, jars, and cups" that Create-A-Pack claims are obsolete inventory may be usable in other areas. (*See* ECF No. 49, ¶ 70.) Therefore, Create-A-Pack's motion for summary judgment regarding its claim for obsolete inventory is denied.

### 3.4. The Defendants' Counterclaims

The defendants assert counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and several misrepresentation claims. (*See* ECF No. 16.) Create-A-Pack has moved for summary judgment on each of the defendants' counterclaims. (*See* ECF No. 34 at 1.)

#### 3.4.1. Breach of Contract

The defendants claim that "Create-A-Pack breached numerous contracts by repeatedly failing to perform co-packing services and have Batterlicious's products ready for delivery by the dates specified" and "by packaging too little product in Batterlicious containers and by using packaging with incorrect UPC labels on Batterlicious containers." (ECF No. 16, ¶¶ 44-45.)

In moving for summary judgment Create-A-Pack contends that "there is no evidence that [it] breached any contract—let alone the numerous contracts as Batterlicious alleges." (ECF No. 34 at 10; *see also* ECF No. 34 at 11.) It argues that "Batterlicious' allegation that [it] failed to make timely deliveries is nothing more than a projection of Batterlicious' own failure to honor the required six-week lead times for purchase orders and to warehouse sufficient safety stock." It argues that Batterlicious's allegation that it "packaged 'too little product' is devoid of any detail or explanation as to when, where, or by how much this occurred, while Batterlicious's claim about the UP labels ignores the fact that Batterlicious provided the UPC labels used by [Create-A-

Pack Foods] in the packaging." (ECF No. 34 at 11.) Moreover, Create-A-Pack continues, "the damages that Batterlicious seeks [for Create-A-Pack's alleged breach of contract] are not available under applicable law and are expressly barred by the governing contract." (*Id.* at 12.)

The defendants' counterclaim does not specify which contract Create-A-Pack allegedly breached. However, its response to the summary judgment motion states that Create-A-Pack breached the Purchase Order Fulfilment Agreement by failing to produce the cookie dough necessary to fill two of the orders on Schedule 1. (ECF No. 50 at 2.) On that issue, as discussed above, the court has already determined that a dispute of material fact exists.

Nonetheless, Create-A-Pack contends it is entitled to summary judgment due to the absence of any evidence from Batterlicious that it suffered any damages as a result of any alleged breach of contract. (ECF No. 53 at 8.) Moreover, it contends that any claim for damages is barred by the Credit Application's Terms and Conditions of Sale. (ECF No. 34 at 11-12; ECF No. 53 at 8-9.)

Batterlicious claims that "Create-A-Pack's breaches caused [it] to lose all of its major customer accounts, destroyed the value of the [its] brand, and caused [it] to go out of business." (ECF No. 16, ¶ 46; *see also* ECF No. 50 at 5.) But Batterlicious does not provide any evidence showing how Create-A-Pack's alleged breaches caused it to suffer these damages. Indeed, as Create-A-Pack points out, Batterlicious provides no evidence

of its damages whatsoever. Under Wisconsin law, a plaintiff must present evidence that it suffered loss or damage in order to avoid summary judgment on a breach of contract claim. *See Cent. Brown Cnty. Water Auth. v. Consoer, Townsend, Envirodyne*, No. 09-C-0131, 2013 WL 501419, at *7 (E.D. Wis. Feb. 11, 2013). Therefore, regardless of the language in the Terms and Conditions of Sale, Batterlicious's breach of contract claim cannot proceed. Consequently, Create-A-Pack's motion for summary judgment as to the defendants' breach of contract claim is granted.

### 3.4.2. Breach of the Duty of Good Faith and Fair Dealing

The defendants claim that "Create-A-Pack breached the duty of good faith and fair dealing by repeatedly failing to perform co-packing services in a timely manner," "by refusing Batterlicious's and the machine manufacturer's assistance with Batterlicious's filling machine and by refusing to take reasonable steps to improve its operation sufficiently to make timely deliveries under its contracts with Batterlicious." (ECF No. 16, ¶¶ 51-52.) Create-A-Pack argues that "there is no independent cause of action" for a breach of the duty of good faith and fair dealing. (ECF No. 34 at 12.) That is, any claim for breach of the duty of good faith and fair dealing is subsumed within Batterlicious's breach of contract claim. Because "Batterlicious cannot prevail on its breach of contract claim, it also cannot prevail on a cause of action based on [Create-A-Pack's] alleged failure to act in good faith in performing the contract." (*Id.* at 16.)

The defendants only address Create-A-Pack's arguments regarding their breach of the duty of good faith and fair dealing claim in their reply brief. (*See* ECF No. 58 at 11.) But that brief is limited to replying to the arguments that Create-A-Pack made in responding to the defendants' cross motion for summary judgment. *See* Fed. R. Civ. P. 56; Civ. L. R. 56. In responding for the first time in their reply brief to Create-A-Pack's good faith and fair dealing argument, the defendants are effectively filing a surreply brief to Create-A-Pack's motion. But they did not seek leave to file a surreply brief, nor did the court allow them to. Therefore, the court disregards that portion of their reply brief.

Consequently, Create-A-Pack's motion for summary judgment regarding the defendants' breach of the duty of good faith and fair dealing claim is granted, and that claim is dismissed. *Cf. Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (a party that fails to respond to an argument waives its challenge to that argument).

### 3.4.3. Negligent and Strict Liability Misrepresentation

The defendants allege claims for negligent and strict responsibility misrepresentation, claiming that Create-A-Pack President Glenn Cochrane made several misrepresentations to Batterlicious upon which Batterlicious relied in entering into a business relationship with Create-A-Pack. (*See, e.g.*, ECF No. 16, ¶¶ 62-64, 70-73.) Create-A-Pack maintains that it made no untrue representations and that, even if it had, Batterlicious's claims for negligent and strict responsibility misrepresentation are barred

Case 2:20-cv-00499-WED   Filed 03/09/22   Page 16 of 21   Document 61

by the economic loss doctrine. (ECF No. 34 at 14.) The defendants respond that the economic loss doctrine does not bar their misrepresentation claims. And even if it did, they could still pursue restitution damages. (ECF No. 50 at 7-8.)

"The economic loss doctrine is a judicially created doctrine that precludes a commercial purchaser of a product from suing in negligence or strict liability to recover from the product's manufacturer a loss that is solely economic." *Prent Corp. v. Martek Holdings, Inc.*, 2000 WI App 194, ¶ 16, 238 Wis. 2d 777, 787–88, 618 N.W.2d 201, 205. The doctrine "bars misrepresentation claims based in negligence and strict responsibility." *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 30, 283 Wis. 2d 555, 580, 699 N.W.2d 205, 216 (internal citations omitted).

The defendants seek damages "resulting from Create-A-Pack's breaches" and from Cochrane's alleged misrepresentations. (*See* ECF No. 16.) Those damages, as the defendants describe them, are economic losses. *See Prent Corp.*, 2000 WI App at ¶ 16, 238 Wis. 2d at 788, 618 N.W.2d at 206 (defining economic loss) (citing *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 314, 592 N.W.2d 201, 205 (1999)). Because the defendants claim to have suffered only economic losses, and because the economic loss doctrine bars negligent and strict responsibility misrepresentation claims, the defendants' misrepresentation claims cannot proceed.

As the defendants point out, "the economic loss doctrine does not apply to an equitable action in contract for recission/ restitution." *Digicorp, Inc. v. Ameritech Corp.*,

2003 WI 54, ¶ 76, 262 Wis. 2d 32, 65, 662 N.W.2d 652, 668 (Sykes, J., concurring) (discussing *Harley–Davidson Motor Co. v. Powersports, Inc.*, 319 F.3d 973, 978 n. 7 (7th Cir. 2003)); *see also India Breweries Inc. v. Miller Brewing Co.*, 2008 WL 11343110 (E.D. Wis. 2008). But nowhere in its pleadings do the defendants seek either recission or restitution. (*See* ECF No. 16.) Therefore, that narrow exception to the economic loss doctrine does not save the defendants' misrepresentation claims from dismissal. Create-A-Pack's motion for summary judgment with respect to the defendants' negligent and strict responsibility misrepresentation claims is granted.

### 3.4.4. Wis. Stat. § 100.18

The defendants also allege statutory misrepresentation under Wis. Stat. § 100.18, claiming that Cochrane and Create-A-Pack violated the statute by making untrue and misleading representations. (ECF No. 16, ¶¶ 78-82.) Create-A-Pack responds that a Wis. Stat. § 100.18 claim is only actionable as a breach of contract claim, not as a tort claim. (ECF No. 34 at 14-15.)

Wis. Stat. § 100.18 is "part of Wisconsin's Deceptive Trade Practices Act, the purpose of which is 'to protect consumers from untrue, deceptive or misleading representations to promote the sale of a product.' It is also intended 'to deter sellers from making false and misleading representations in order to protect the public.'" *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶ 49, 389 Wis. 2d 669, 694–95, 937 N.W.2d 37, 50 (internal citations omitted). "A claim under § 100.18(1), has three elements: (1) the

defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff." *T&M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 1082768, at *9 (E.D. Wis. Mar. 5, 2020). "A single representation to a single person is enough to trigger § 100.18(1)'s protections." *Hinrichs*, 2020 WI at ¶ 65, 389 Wis. 2d at 699–700, 937 N.W.2d at 52. The economic loss doctrine does not bar claims brought under Wis. Stat. § 100.18. *See id.* at ¶ 56.

The defendants claim that "Glenn Cochrane, acting on behalf of Create-A-Pack, made representations of fact regarding Create-A-Pack's expertise, abilities, and capacity to fulfill the co-packing requirements of Batterlicious to Mr. Levy and Batterlicious with the intent to sell Create-A-Pack's co-packing services to Batterlicious." (ECF No. 16, ¶ 78.) They claim that those representations "were untrue and misleading, as evidenced by Create-A-Pack's chronic inability to fulfill Batterlicious orders on time, to properly fill Batterlicious packages with Batterlicious products, or to use correct Batterlicious packaging." (*Id.*, ¶ 79.) As explained above, genuine disputes of material fact exist as to whether Create-A-Pack filled Batterlicious's orders on time and whether it correctly packaged Batterlicious products. Therefore, Create-A-Pack's motion for summary judgment as to the defendants' § 100.18 claim is denied.

## 4. Conclusion

For the reasons stated above, Create-A-Pack's motion for summary judgment is granted in part and denied in part. It is granted with respect to Create-A-Pack's claim that Batterlicious breached the Credit Application by failing to pay for the products that it accepted from Create-A-Pack after March 2019 and with respect to Batterlicious's breach of contract counterclaim, breach of the duty of good faith and fair dealing counterclaim, and negligent and strict responsibility misrepresentation counterclaims. It is denied with respect to Create-A-Pack's claim that Batterlicious breached the Promissory Note; with respect to Create-A-Pack's breach of guaranty claim against the Levys; with respect to Create-A-Pack's claim that Batterlicious breached the Credit Agreement by failing to pay for the obsolete inventory; and with respect to Batterlicious's Wis. Stat. § 100.18 counterclaim.

Batterlicious's cross motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. It is granted with respect to the plaintiff's second breach of contract claim in part and the defendants' breach of contract counterclaim, breach of the duty of good faith and fair dealing counterclaim, and negligent and strict responsibility misrepresentation counterclaims. The defendants' breach of contract counterclaim, breach of the duty of good faith and fair

dealing counterclaim, and negligent and strict responsibility misrepresentation counterclaims are dismissed.

The defendant's cross motion for summary judgment is **DENIED**.

Dated at Milwaukee, Wisconsin this 9th day of March, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge