# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CREATE-A-PACK FOODS, INC.,

                Plaintiff,

      v.                               **Case No. 20-CV-499**

BATTERLICIOUS COOKIE
DOUGH COMPANY,
CLAUDIA G. LEVY, AND
STEPHEN G. LEVY,

                Defendants.

# DECISION AND ORDER

## 1.    Background

On March 3, 2020, Create-A-Pack filed this lawsuit, alleging two claims for breach of contract against Batterlicious and a claim for breach of guaranty against the Levys. (ECF No. 1.) Batterlicious and the Levys responded with several counterclaims, alleging breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, strict responsibility misrepresentation and statutory misrepresentation under Section 100.18 of the Wisconsin Statutes. (ECF No. 16.)

On October 15, 2021, Create-A-Pack moved for summary judgment on each of its claims and on the defendants' counterclaims. (ECF No. 33.) The defendants responded with a cross-motion for summary judgment. (ECF No. 47.)

On March 9, 2022, this court issued an opinion and order on the parties' cross motions for summary judgment, denying Batterlicious's motion for summary judgment in its entirety, and granting Create-A-Pack's summary judgment motion in part and denying it in part. (ECF No. 61 at 20-21.) The court granted in part Create-A-Pack's motion for summary judgment on Batterlicious's counterclaims, dismissing Batterlicious's counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and negligent and strict responsibility misrepresentation. (ECF No. 61 at 20-21.) Only Batterlicious's statutory misrepresentation counterclaim survived. (ECF No. 61 at 20-21.)

On May 27, 2022, Batterlicious filed a motion to amend its common law misrepresentation counterclaims. (ECF No. 73.) It pointed out that the court dismissed those counterclaims on the ground they were barred by the economic loss doctrine. (ECF No. 73 at 1-2 (citing ECF No. 61 at 17).) In the process, the court noted that the "doctrine does not apply to an equitable action in contract for rescission/ restitution." (ECF No. 73 at 1-2 (citing ECF No. 61 at 17-18 (citations omitted)).) On May 31, 2022, this court granted Batterlicious's motion to file amended counterclaims so that it could seek rescission and restitution instead of damages for its misrepresentation counterclaims. (ECF No. 74.)

On June 10, 2022, Batterlicious filed its Amended Counterclaims, modifying its negligent and strict responsibility misrepresentation counterclaims by seeking "rescission, restitution, or both" instead of damages. (ECF No. 75 at 9, 11; ¶¶ 66, 76.)

**2.     Counterclaim's Allegations**

Batterlicious alleges in its Amended Counterclaims that on February 1, 2018, Batterlicious's Chief Operating Officer, Stephen Levy, met with Create-A-Pack's President, Glen Cochrane, to discuss a potential business arrangement. (ECF No. 75 at 2, ¶ 12.)

During the February 2018 meeting, Cochrane "represented to Batterlicious … that Create-A-Pack had the expertise and industrial wherewithal to seamlessly transition Batterlicious co-packing services from [Batterlicious's former co-packer] to Create-A-Pack" and that "Create-A-Pack could fulfill Batterlicious orders in a professional and timely manner, thus satisfying the needs of Batterlicious's retail customers." (ECF No. 75 at 8, ¶¶ 56-57.) Cochrane "assured Mr. Levy that Create-A-Pack could handle and operate a filling machine owned by Batterlicious and that Crate-A-Pack (sic) had its own machines that could be used for the filling of Batterlicious's cookie dough products." (ECF No. 75 at 3, ¶ 14.) These "representations of fact regarding Create-A-Pack's expertise, abilities, and capacity to fulfill the co-packing requirements of Batterlicious were untrue" and "Create-A-Pack had problems fulfilling its responsibilities under the co-packing agreement immediately." (ECF No. 75 at 3, 9, 10; ¶¶ 20, 58, 68.) Specifically,

Create-A-Pack failed to properly operate Batterlicious's filling machine, failed to meet delivery deadlines, failed to use the correct UPC codes, and failed to properly fill packages with the correct amount of product. (ECF No. 75 at 4-5; ¶¶ 21-29.)

Batterlicious "believed Mr. Cochrane's representations," "relied upon them in entering into … [a] business relationship with Create-A-Pack," and, "[a]bsent Mr. Cochrane's misrepresentations, Batterlicious would never have entered into a business relationship with Create-A-Pack." (ECF No. 75 at 9, 10; ¶¶ 62-63, 72-73.) "Mr. Cochrane's misrepresentations were a substantial factor in causing … Batterlicious to go out of business," and on that basis, "Batterlicious is entitled to rescission, restitution, or both." (ECF No. 75 at 9, 11; ¶¶ 65-66, 75-76.)

Batterlicious altered the final paragraphs of its negligent and strict responsibility misrepresentation counterclaims to request rescission and restitution as a remedy instead of damages. (ECF No. 75 at 9, 11; ¶¶ 66, 76.) Apart from those changes, the Amended Counterclaims for negligent and strict responsibility misrepresentation are unchanged from the previously dismissed Counterclaims. (ECF Nos. 16 at 15-18, ¶¶ 55-76; 75 at 8-11, ¶¶ 55-76.) Batterlicious's statutory misrepresentation counterclaim under Wis. Stat. § 100.18, which survived summary judgment, is unchanged. (ECF Nos. 16 at 18-19, ¶¶ 77-82; 75 at 11, ¶¶ 77-82.)

Currently pending before the court is Create-A-Pack's motion for partial judgment on the pleadings. (ECF No. 79.) Create-A-Pack asks that the court dismiss Batterlicious's

amended counterclaims for negligent and strict responsibility misrepresentation, as well as Batterlicious's statutory misrepresentation counterclaim. That motion has been fully briefed and is ready for resolution.

### 3. Applicable Law

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed … a party may move for judgment on the pleadings." A motion under Rule 12(c) generally requires the court to apply the same well-established standard applicable to a motion under Rule 12(b)(6). Thus, to survive a motion for judgment on the pleadings, "the complaint must state a claim that is plausible on its face." *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016) (quoting *Vinson v. Vermilion County*, 776 F.3d 924, 928 (7th Cir. 2015)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lodholtz v. York Risk Servs. Group*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court accepts as true the facts alleged in the complaint. *St. John*, 822 F.3d at 388.

However, the court need not accept as true any legal assertions. *Lodholtz*, 778 F.3d at 639 (citing *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014)). A Rule 12(c) motion is to be granted "only if it appears beyond doubt that [the plaintiff] cannot prove any facts that would support [its] claim for relief." *Landmark Am. Ins. Co. v. Hilger*, 838

F.3d 821, 824 (7th Cir. 2016) (quoting *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

> Having said that, Rule 12(c) is more expansive than Rule 12(b)(6):
>
> When the movant seeks relief under 12(c) based upon the substantive merits of the case rather than a procedural defect cognizable under 12(b)(6), the court applies the standard applicable to a motion for summary judgment. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Thus, the court considers whether there exists a "genuine dispute as to any material fact" and whether the movant "is entitled to judgment as a matter of law." *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). The difference between Rule 12(c) and Rule 56 is that under Rule 12(c) the court's review is limited to the pleadings. *Alexander*, 994 F.2d at 336. "When the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings under Rule 12(c)." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c).").

*Chapman v. Milwaukee County*, No. 15-CV-14, 2015 U.S. Dist. LEXIS 130195, at *4 (E.D. Wis. Sept. 25, 2015).

## 4. Analysis

### 4.1 Amended Negligent and Strict Responsibility Misrepresentation Counterclaims

Create-A-Pack argues that Batterlicious's claims for negligent and strict responsibility misrepresentation fail because they seek to rescind contracts that are not rescindable. On that basis, Create-A-Pack asks that this court dismiss the common law misrepresentation counterclaims.

Create-A-Pack points out that Batterlicious's counterclaims for negligent and strict responsibility misrepresentation fail to specify which contract or contracts they seek to rescind. (ECF No. 79 at 3.) Rather than direct its misrepresentation claims at specific contracts, "Batterlicious directs its misrepresentation claim at the parties' 'business relationship.'" (ECF No. 79 at 3 (quoting ECF No. 75 at 9, 10; ¶¶ 63, 73).) Nonetheless, Create-A-Pack speculates that Batterlicious's amended negligent and strict responsibility misrepresentation counterclaims seek to rescind the parties' Credit Application agreement and "the individual sales contracts." (ECF No. 79 at 4-5.)

In response, Batterlicious clarifies that it is seeking rescission of the Credit Application, Individual Personal Guaranty, Purchase Order Fulfillment Agreement, General Business Security Agreement, Promissory Note, and underlying purchase orders. (ECF No. 80 at 3.) Batterlicious did not respond to Create-A-Pack's arguments as to why the Credit Application agreement and the purchase orders were not rescindable. (ECF No. 80.) Rather, it generally asserts that, but for Create-A-Pack's misrepresentations about its co-packing capabilities, "Batterlicious would not have entered into *any* contracts with C[reate-A-Pack]." (ECF No. 80 at 3 (citing ECF No. 75 at 9,10; ¶¶ 63, 73).) On that basis, Batterlicious explains that it is seeking "rescission and restitution for the entire contractual/business relationship"—*i.e.*, "the contracts forming the parties' one-year relationship." (ECF No. 80 at 3.)

Batterlicious's failure to identify which contracts it seeks to rescind warrants dismissal of the negligent and strict responsibility misrepresentation counterclaims. While Batterlicious clarifies in its brief in response to Create-A-Pack's motion which contracts it seeks to rescind, that information is wholly missing from its Amended Counterclaims. On that basis alone, the court will grant Create-A-Pack's motion for judgment on the pleadings on Batterlicious's negligent and strict responsibility misrepresentation counterclaims.

Even if Batterlicious's counterclaims identified the contracts Batterlicious specified for the first time in its response brief, dismissal still would be warranted. None of those contracts is rescindable.

As Create-A-Pack points out, Batterlicious cannot seek to rescind the Individual Personal Guaranty because "Batterlicious is not a party" to that contract, only the Levys are, and therefore "[t]here is no basis … to rescind the Levys' guaranties." (ECF No. 81 at 2.) Only Batterlicious pleaded rescission; the Levys did not. (ECF No. 75 at 9, 11; ¶¶ 66, 76.) In fact, the only counterclaim made by all three defendants is the statutory misrepresentation counterclaim brought under § 100.18 of the Wisconsin Statutes. (ECF No. 75 at 11, ¶ 82.) As such, even if Batterlicious had identified in its counterclaims that it sought rescission of the Individual Personal Guaranty, there would be no basis to rescind the Levys' Individual Personal Guaranty.

Moreover, as Create-A-Pack argues, the Purchase Order Fulfillment Agreement, the General Business Security Agreement, and the Promissory Note (collectively, "the March 2019 agreements") are not rescindable because they were entered into more than a year after the parties' February 2018 meeting at which Batterlicious alleges Create-A-Pack made its misrepresentations. (ECF No. 81 at 2 (citing ECF No. 72 at 15, Ex. 3; 17, Ex. 4; 23, Ex. 5).) "All misrepresentation claims share the following required elements: 1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 13, 270 Wis.2d 146, 157, 677 N.W.2d 233, 239 (citing *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 25, 288 N.W.2d 95, 99 (Wis. 1980)).

Batterlicious's Amended Counterclaim alleges that, "immediately" following the parties' February 2018 meeting, Create-A-Pack failed to perform on its promises and representations. (ECF No. 75 at 3, ¶ 20.) But it is undisputed that the parties continued to do business with each other for over a year following the February 2018 meeting (ECF Nos. 75 at 6, ¶¶ 39-41; 49 at 10, ¶ 62), and entered into the Purchase Order Fulfillment Agreement, the General Business Security Agreement, and the Promissory Note in March 2019, over a year after Create-A-Pack made its alleged misrepresentations (ECF No. 72 at 15, Ex. 3; 17, Ex. 4; 23, Ex. 5). Because it alleges it discovered the misrepresentations immediately following the parties' February 2018 meeting, Batterlicious cannot claim that

"it believed the misrepresentations to be true and relied on the misrepresentations" when agreeing over a year later to the terms of the March 2019 agreements. *See Whipp v. Iverson*, 43 Wis. 2d 166, 169, 168 N.W.2d 201, 203 (Wis. 1969) ("[T]he plaintiff must believe such representation to be true and rely thereon to his damage."). Therefore, even if Batterlicious had specified in its Amended Counterclaims that it sought to rescind the March 2019 Agreements, no basis would exist for rescinding those agreements.

There also would be no basis for rescinding the March 2018 Credit Application agreement or any of the parties' purchase order agreements. Batterlicious affirmed those agreements and waived its right to seek rescission of them. Under Wisconsin law, "the right to rescind must be exercised within a reasonable time, or with reasonable promptness, after discovery of the facts from which it arises." *McKearn v. Lerman Tire Serv., Ltd.*, 32 Wis. 2d 329, 337, 145 N.W.2d 731, 736 (Wis. 1966) (internal citation and quotations omitted). "When a party to a contract discovers an alleged fraud [or misrepresentation] …, it has two choices: 'affirm the contract and sue for damages, or … disaffirm and seek restitution.'" *AVL Powertrain Eng'g, Inc. v. Fairbanks Morse Engine*, 178 F. Supp. 3d 765, 772 (W.D. Wis. 2016) (quoting *Eklund v. Koenig & Assocs., Inc.*, 153 Wis.2d 374, 380, 451 N.W.2d 150 (Wis. Ct. App. 1989)). "If a party elects to affirm the contract, he may not 'later on disaffirm it and ask for rescission.'" *Id.* (quoting *Beers v. Atlas Assurance Co.*, 231 Wis. 361, 285 N.W. 794, 797 (1939)). "A party further waives the right to rescission

if it 'unreasonably delays in asserting that right.'" *Id.* (quoting *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 319, 340 N.W.2d 704, 718 (Wis. 1983)).

The Amended Counterclaims state:

39.     Throughout their brief business relationship, Batterlicious and Create-A-Pack entered into numerous enforceable contracts for the provision of co-packing services.

40.     Each time Batterlicious informed Create-A-Pack of an order from a retail customer and Create-A-Pack either acknowledged that order or took steps to provide co-packing services so that Batterlicious could fulfill the order, the parties formed an enforceable contract.

41.     Create-A-Pack confirmed each contract with an invoice to Batterlicious for its co-packing services.

(ECF Nos. 16 at 13-15, ¶¶ 38-54; 75 at 6-8, ¶¶ 38-54.) Batterlicious further alleges that, "[d]espite Mr. Cochrane's assurances that the transition" from Batterlicious's previous co-packer to Create-A-Pack "would be seamless, Create-A-Pack had problems fulfilling its responsibilities under the co-packing agreement immediately." (ECF No. 75 at 3, ¶20.) However, Batterlicious continued to order and accept products from Create-A-Pack. (ECF Nos. 75 at 6-8, ¶¶ 38-54; 61 at 2 (citing ECF No. 49 at 6, 7; ¶¶ 32, 39, 41-42).)

In short, although Batterlicious became aware of Create-A-Pack's misrepresentations about its co-packing abilities immediately upon noticing Create-A-Pack's co-packing deficiencies, it continued to order and accept Create-A-Pack's products, waiting two years before suing for damages (ECF No. 16 at 6-20) and two more years before suing to rescind (ECF No. 75 at 9, 11; ¶¶ 66, 76). Under Wisconsin law,

waiting four years to seek rescission is not "within a reasonable time, or with reasonable promptness." *See AVL Powertrain Eng'g*, 178 F. Supp. 3d at 772 (finding waiver where "a party claim[ed] it was induced into a contract by a misrepresentation and the facts show the party endeavored to operate under the terms of the contract for sixteen months until the other party finally stopped its efforts to perform"); *U.S. Plastic Lumber, Ltd. v. Strandex Corp.*, No. 02-C-211-C, 2003 WL 23144861, at *7 (W.D. Wis. Feb. 7, 2003) ("[T]he 18-month delay by itself is enough to deny plaintiffs the remedy of rescission."); *Thompson*, 115 Wis. 2d at 319, 340 N.W.2d at 718 ("Thompson's failure to assert his rights for more than six months together with his affirmance of the lease … constitute a waiver of any right to rescind."); *Grube v. Daun*, 213 Wis. 2d 533, 551-52, 570 N.W.2d 851, 859-60 (Wis. 1997) (finding waiver where a party affirmed a contract and waited four years to sue for rescission). Therefore, Batterlicious affirmed and waived its right to rescind the 2018 Credit Application and the parties' purchase order agreements.

In sum, even if Batterlicious specified in its negligent and strict responsibility misrepresentation counterclaims that it sought rescission of the agreements it identifies for the first time in its response brief, not one of those agreements is rescindable. Therefore, Create-A-Pack's motion for partial judgment on the pleadings on Batterlicious's negligent and strict responsibility misrepresentation counterclaims will be granted.

### 4.2.    Wis. Stat. § 100.18

Wis. Stat. § 100.18 is "part of Wisconsin's Deceptive Trade Practices Act, the purpose of which is 'to protect consumers from untrue, deceptive or misleading representations to promote the sale of a product.' It is also intended 'to deter sellers from making false and misleading representations in order to protect the public.'" *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶ 49, 389 Wis. 2d 669, 694–95, 937 N.W.2d 37, 50 (internal citations omitted). "A claim under § 100.18(1), has three elements: (1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff." *T&M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 1082768, at *9 (E.D. Wis. Mar. 5, 2020). "A single representation to a single person is enough to trigger § 100.18(1)'s protections." *Hinrichs*, 2020 WI at ¶ 65, 389 Wis. 2d at 699–700, 937 N.W.2d at 52.

Batterlicious claims that Create-A-Pack's February 2018 misrepresentations about its co-packing capabilities violated Wis. Stat. § 100.18. (ECF No. 75, at 11 ¶¶ 78-82.) Create-A-Pack argues that Batterlicious's statutory misrepresentation claim fails because (1) § 100.18 does not apply to misrepresentations involving food sales and, alternatively, (2) Batterlicious cannot satisfy § 100.18's second and third statutory elements.

### 4.2.1. Food Sales

Create-A-Pack first argues that this court should dismiss Batterlicious's statutory misrepresentation claims because § 100.18 does not apply to misrepresentations involving food sales. (ECF No. 79 at 8 (citing *Gallego v. Walmart*, 2005 WI App 244, ¶ 21, 288 Wis. 2d 229, 243-44, 707 N.W.2d 539).) Batterlicious responds that *Gallego* does not apply to its § 100.18 claim because its Amended Complaint clearly alleges that Create-A-Pack's misrepresentations were about its co-packing services, not the cookie dough food products. (ECF No. 80 at 7-8.)

In *Gallego*, a class of Walmart customers sued Walmart under § 100.18, claiming that it "misrepresented the origin of salmon sold in its stores." *Gallego*, 2005 WI App at ¶ 1, 288 Wis. 2d at 232, 707 N.W.2d at 540-41. While Walmart's alleged misrepresentation in *Gallego* clearly concerned its food products, Create-A-Pack's alleged misrepresentations concern its co-packing services. (ECF No. 75 at 11, ¶ 78.) Batterlicious's Amended Complaint does not allege that Create-A-Pack made any misrepresentations about the cookie dough products themselves. Thus, *Gallego* does not bar Create-A-Pack's § 100.18 claim.

### 4.2.2. Statutory Elements

Create-A-Pack first argues that Batterlicious fails to allege facts necessary to support a claim that Create-A-Pack's "representation was untrue, deceptive or misleading" because the alleged misrepresentations concerned future events or

unfulfilled promises and are therefore barred by the preexisting fact rule. (ECF No. 79 at 8-9.)

"Under Wisconsin law, it is well-settled that liability for misrepresentation must be based on a false statement or pre-existing fact, not an unfulfilled promise or statement as to future events that turns out to be mistaken." *Miller v. Vonage Am., Inc.*, No. 14-CV-379, 2015 U.S. Dist. LEXIS 308, at *10 (W.D. Wis. Jan. 5, 2015) (first citing *Hartwig v. Bitter*, 29 Wis. 2d 653, 656, 139 N.W.2d 644 (1966); and then citing *Badger Pharmacal v. Colgate-Palmolive Co.*, 1 F.3d 621, 627 (7th Cir. 1993)). Wisconsin recognizes two exceptions to the preexisting fact rule: (1) "where the promisor has a present intention not to perform" and (2) where, "though a matter asserted is an opinion, … the maker is aware of present facts incompatible with that opinion." *See Hartwig*, 29 Wis. 2d at 658, 139 N.W.2d at 647.

Batterlicious alleges that Create-A-Pack represented during the parties' February 2018 meeting that it (1) "had the expertise and industrial wherewithal" to (2) "seamlessly transition" or take over Batterlicious's co-packing services and (3) "fulfill Batterlicious's orders in a professional and timely manner, thus satisfying the needs of Batterlicious's retail customers." (ECF No. 75 at 8, 10; ¶¶ 56-57, 68.) These alleged misrepresentations about Create-A-Pack's current and future co-packing capabilities fit the preexisting fact rule's second exception because, at the time Create-A-Pack allegedly made the representations, "it is plausible … that Create-A-Pack knew of facts incompatible with

the statements made to induce Batterlicious into contracting with C[reate-A-Pack] as its co-packer." (ECF No. 80 at 6.)

Although each representation is fairly described as an opinion—and the latter two claims are opinions about future events—whether Create-A-Pack knew of facts incompatible with its representations about its co-packing capabilities at the time of the February 2018 meeting cannot be determined from the face of the Amended Counterclaims. *Cf. Lundin v. Shimanski*, 124 Wis. 2d 175, 368 N.W.2d 676 (1985) (concluding that misrepresentation claims were not barred by the preexisting fact rule where defendant-seller intentionally misrepresented to plaintiff-buyers that they would easily obtain conditional use permit for a for-sale home, but subsequent factfinding uncovered evidence that seller was aware that obtaining the conditional use permit was impossible). Therefore, this argument is not a basis for entering judgment on the pleadings on Create-A-Pack's behalf.

Create-A-Pack also argues that Batterlicious fails to allege that it "sustained a pecuniary loss as a result" of Create-A-Pack's alleged misrepresentations about its co-packing capabilities. It cites to a Wisconsin Court of Appeals case for the proposition that pecuniary loss, as defined in § 100.18, only "permits recovery of the purchase price or something less." (ECF No. 81 at 10 (citing *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, ¶ 23, 359 Wis. 2d 597, 613, 859 N.W.2d 451, 459).) Batterlicious does not explicitly claim as its pecuniary loss the purchase price, or something less, of Create-A-

Case 2:20-cv-00499-WED   Filed 10/13/22   Page 16 of 18   Document 84

Pack's co-packing services. But given that Batterlicious has yet to pay Create-A-Pack for those services, the court construes those payments as included in Batterlicious's alleged pecuniary loss—in addition to the diminution in value of its business. (ECF No. 81 at 10.)

In the case Create-A-Pack cites for its proposed definition of pecuniary loss, the court was reviewing a trial court's conclusion that pecuniary loss under § 100.18 included only "benefit-of-the bargain" damages, defined as "the difference between the value of the property as represented and its actual value as purchased." *Mueller*, 2015 WI App at ¶ 21, 359 Wis. 2d at 612-13, 859 N.W.2d at 458-59 (internal citations omitted) Therefore, the plaintiff could not claim the full purchase price as his pecuniary loss. *Id.* Rejecting the trial court's limited definition of pecuniary loss, the Wisconsin Court of Appeals concluded that, "although Wis. Stat. § 100.18 does not define 'pecuniary loss,' the plain meaning of the term is broad enough to encompass any *monetary* loss, including the full purchase price, subject to claimant's proof." *Id.* at ¶ 22, 359 Wis. 2d at 613, 859 N.W.2d at 459. For further support that pecuniary loss may encompass—but is not limited to—the full purchase price, the appellate court cited to jury instructions which "permit recovery of the purchase price or something less." *Id.* at ¶ 23, 359 Wis. 2d at 613, 859 N.W.2d at 459 (internal citation omitted). The court did not, however, conclude that pecuniary loss was *limited* to recovery of the purchase price.

Batterlicious alleges that it suffered a diminution in the value of its business due to Create-A-Pack's alleged misrepresentations about its co-packing capabilities. (ECF No.

75 at 10-11, ¶¶ 72-75.) Specifically, it alleges Create-A-Pack's misrepresentations caused "the deterioration and eventual collapse of every one of Batterlicious's major accounts." (ECF No. 75 at 6, ¶¶ 35-37.) Section 100.18's definition of "pecuniary loss" encompasses such alleged monetary losses. *See Mueller*, 2015 WI App at ¶ 22, 359 Wis. 2d at 613, 859 N.W.2d at 459.

Therefore, Create-A-Pack's motion for partial judgment on the pleadings on Batterlicious's § 100.18 claim will be denied.

## 5. Conclusion

For the reasons stated above, Create-A-Pack's motion for partial judgment on the pleadings (ECF No. 78) is granted in part and denied in part. It is granted with respect to Batterlicious's negligent and strict responsibility misrepresentation counterclaims. It is denied with respect to Batterlicious's Wis. Stat. § 100.18 counterclaim.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for partial judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. It is granted with respect to the defendant's negligent and strict responsibility misrepresentation counterclaims. It is denied with respect to the defendant's Wis. Stat. § 100.18 counterclaim. The defendant's negligent and strict responsibility misrepresentation counterclaims are dismissed.

Dated at Milwaukee, Wisconsin this 13th day of October, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge